UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORI M.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

19-CV-1629-LJV
DECISION & ORDER

On December 2, 2019, the plaintiff, Lori M. ("Lori"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On April 27, 2020, Lori moved for judgment on the pleadings, Docket Item 6; on July 24, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on August 11, 2020, Lori replied, Docket Item 10.

For the reasons stated below, this Court denies Lori's motion and grants the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Lori argues that the ALJ erred in three ways. Docket Item 6-1 at 14. First, she argues that the ALJ erred by failing to give controlling weight to the opinion of her treating psychiatrist, Maria Nickolova, M.D. *Id.* Second, she argues that because he

discounted all the medical opinions in the record, the ALJ erred by relying on his lay opinion to craft her residual functional capacity ("RFC"). *See id.* at 14, 19-26. Third, she argues that the ALJ erred by failing to discuss the opinion of one of her counselors, Tracy Sherman, LMHC. *Id.* at 14. This Court disagrees and accordingly affirms the Commissioner's finding of no disability.

## II. ANALYSIS

### A. TREATING PHYSICIAN RULE

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether

the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ explicitly addressed all four *Burgess* factors before giving Dr. Nickolova's opinion partial weight. He considered whether Dr. Nickolova was a specialist and discussed "the frequency, length, nature, and extent of treatment." The ALJ noted multiple times that Dr. Nickolova was Lori's *psychiatrist*, a doctor specializing in mental health issues. *See, e.g.*, Docket Item 4 at 29-30. And he went on to explain that Dr. Nickolova had "limited contact" with Lori, specifically noting that it was only "10 minutes each month," which "limit[ed] the persuasive value of [her] opinion." *Id.* at 30. That is consistent with Dr. Nickolova's own notes stating that her visits with Lori consisted of ten-minute monthly sessions. *See* Docket Item 4-3 at 61.

The ALJ also considered "the amount of medical evidence supporting [Dr. Nickolova's] opinion," as well as "the consistency of the opinion with the remaining medical evidence." He summarized Dr. Nickolova's observations and conclusions before detailing why he gave her opinion partial weight.[3] *See* Docket Item 4 at 29-30. For example, the ALJ explained that Dr. Nickolova's findings regarding Lori's ability to return to full-time employment and absenteeism were conclusions reached "without

[3] Of particular relevance, the ALJ noted that "Dr. Nickolova cited objective findings that showed fair performance on eye contact, attention span, and concentration, with depressed and anxious mood." Docket Item 4 at 29-30.

explanation or support." *Id.* at 29, 30 (noting that Dr. Nickolova's "mild- to moderate findings do not imply the existence of severe limitations, and they do not explain at all [her] opinion regarding decompensation or absenteeism, which I find to be conclusory"). And despite the lack of support for Dr. Nickolova's conclusions regarding decompensation and absenteeism, the ALJ credited the rest of the opinion as "generally consistent with the medical evidence of record as a whole."[4] *Id.* at 30.

Lori argues that "[a]n ALJ's failure to identify the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given demonstrates a lack of substantial evidence, even if the conclusion the ALJ came to may seem justified on the record." Docket Item 6-1 at 15 (citing *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-483 (W.D.N.Y. 2016)). She asserts that "a bare statement that the opinion is 'not supported by treatment notes or the objective medical evidence of the record' is insufficient to constitute 'good reason' for granting a treating source low weight, and therefore is grounds for reversal." *Id.* at 16 (quoting *Webb v. Colvin*, 2013 WL 5347563 at *6 (W.D.N.Y. Sept. 23, 2013)).

But the ALJ did give reasons for discounting portions of Dr. Nickolova's opinion, and those reasons were much more than "a bare statement." Indeed, the ALJ cited specific medical evidence and explained in detail how it failed to support Dr. Nickolova's

---

[4] The ALJ's decision also thoroughly and carefully detailed Lori's testimony at the hearing regarding her symptoms. Docket Item 4 at 26-27. The ALJ took note of the "third party adult function report" submitted by Lori's friend, as well as the letter from Lori's counselor. *Id.* at 27. He chronologically summarized the objective medical evidence in the record. *Id.* at 27-29. And, in addition to his explanation of his decision to assign partial weight to Dr. Nickolova's opinion, he explained in detail the weight assigned to the opinions of Christine Ransom, Ph.D.; "S. Shapiro, Ph.D."; Beth Hancock, LMHC.; Nancy Kells, CSW-R; and Emily Becker, LMSW, and why he assigned that weight to them. *Id.* at 29-31.

opinion regarding absenteeism and decompensation. *See* Docket Item 4 at 29-30. Moreover, the ALJ afforded more weight to Dr. Nickolova's opinion than to any other medical opinion. *See* Docket Item 4 at 30-31 (assigning medical opinions other than Dr. Nickolova's little to no weight). As the plaintiff argues, the "opinion of a treating source is generally given greater weight," Docket Item 6-1 at 15, and that is exactly what the ALJ did here.[5]

In short, the ALJ properly applied the *Burgess* factors and articulated his reasoning in affording Dr. Nickolova's opinion only partial weight. Although the ALJ's interpretation of the record was not the only possible interpretation, it was supported by substantial evidence—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). And for that reason, this Court cannot and will not disturb it.

[5]Citing *Keska v. Comm'r of Soc. Sec.*, 2019 WL 453362 at *6 (W.D.N.Y. Feb. 5, 2019), Lori also argues that the ALJ had a duty to recontact Dr. Nickolova after finding that her opinion regarding absenteeism was unsupported by the medical evidence because that finding created a gap in the record. *See* Docket Item 6-1 at 18. In *Keska*, however, this Court noted that the record lacked "objective evidence regarding Keska's ability to stand and walk" and "there was nothing in the record to support the RFC assessment that the ALJ ultimately reached." *Keska*, 2019 WL 453362 at *6. There is no such gap here. *See* Section II.B. (discussing why the ALJ's RFC *is* supported by opinion evidence). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 48).

### B. MENTAL RFC

Lori argues that because the ALJ granted only partial weight to Dr. Nickolova's opinion, and only partial or no weight to the other opinions in the record,[6] the ALJ must have impermissibly relied on his lay opinion of bare medical findings to reach the RFC determination. *See* Docket Item 6-1 at 19-26. She also contends that by discounting all the opinions, the ALJ created a gap in the record. *See id.* at 21. And she asserts that because "the ALJ's RFC was too complex to come to without the aid of an opinion," it is not supported by substantial evidence. *Id.* at 19, 24-25. This Court disagrees.

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. *Burgess*, 537 F.3d at 128 (citation omitted). And before an ALJ may deny a claimant's application, he must "confront the evidence in [the claimant's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

An ALJ's RFC determination, however, does not need to "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*; *see also* 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as . . . [the claimant's] residual functional capacity . . . , the final responsibility for deciding these issues is reserved to the Commissioner.").

---

[6] The ALJ gave opinions other than Dr. Nickolova's little to no weight as medical opinions; he gave partial weight to one of the counselor's opinions "as a professional assessment." *See* Docket Item 4 at 31.

When an ALJ adopts only parts of a medical opinion, he must explain why the other parts were rejected. *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("[A]n ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portion."). But the "explanation need not be exhaustive: it is enough if the Court can 'glean the rationale of an ALJ's decision.'" *Chance v. Comm'r of Soc. Sec.*, 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019) (quoting *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Here, the ALJ took seriously his responsibility to weigh all the evidence and find an RFC consistent with the record as a whole. *See* 20 C.F.R. § 416.927(d)(2). He discussed six opinions in the record and explained his reasoning behind the weight assigned to each of them. *See* Docket Item 4 at 29-31. He discounted some opinions and portions of opinions because they failed to account for the increased severity of Lori's condition over time. *See, e.g.*, *id.* at 30 (assigning little weight to opinion of consultative examiner, Christine Ransom, Ph.D., because "subsequent evidence would show [Lori's] condition would become more severe"); *see also id*. (assigning little weight to opinion of psychological consultant, "S. Shapiro, Ph.D.," because "considerable . . . evidence . . . subsequently received . . . shows that [Lori's] condition is more severe than assessed by Dr. Shapiro"). He discounted parts of others because they addressed periods of limited duration, *see, e.g., id.* (assigning little weight to opinion of counselor, Beth Hancock, LMHC, in part because Hancock "was unable to say if the condition" causing limitations "would last at least 12 months" and Lori was released from treatment for that condition "within two weeks of the assessment"), or because they overstated limitations in ways that were inconsistent with the medical evidence, *see, e.g., id.* at 30-

31 (providing detailed reasons for assigning no weight to medical opinion of social worker Nancy Kells, CSW-R, and limited weight to "professional assessment" of counselor Emily Becker, LMSW). And he explained in detail why he did not adopt certain portions of each opinion. *See, e.g.*, *id.* at 30 (rejecting counselor Hancock's conclusion that Lori would be unable to work without frequent absences because, while "unquestionably true at the time of the assessment," the record reflects that those symptoms "were not generally reported outside of [Lori's] brief hospitalization for binge eating disorder and uncontrolled diabetes"); *id.* at 29 (rejecting Dr. Nickolova's opinion that Lori would miss four or more days of work a month as conclusory).

Contrary to Lori's argument, this does not suggest that the ALJ arrived at an RFC without the aid of a medical opinion. Indeed, although his RFC determination did not adopt any one opinion, the ALJ appropriately and thoughtfully addressed and balanced each opinion in formulating the RFC. And his detailed reasoning enabled the Court to understand, review, and assess his findings. *Cf. Dittmar v. Comm'r of Soc. Sec.*, 2017 WL 2333836, at *5 (N.D.N.Y. May 30, 2017) ("the ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings")

This Court is also unpersuaded by Lori's argument that whenever an ALJ does not give significant or controlling weight to any medical opinion, he automatically creates a gap in the record. *See* Docket Item 6-1 at 21-22 (and cases cited therein). That may be true in some circumstances, *see, e.g.*, *Kiggins v. Comm'r of Soc. Sec.*, 2019 WL 1384590 at *5 (W.D.N.Y. Mar. 27, 2019) (holding that it was "reasonable to assume that the ALJ must have relied upon the raw medical data to form his own 'common sense'

RFC" because he failed to give "controlling or significant weight" to any opinion), but it is not always true; rather, it depends on the facts and analysis in each case.[7] To hold otherwise would suggest that an ALJ always must conform his or her RFC determination to a specific opinion in the record. But such a rule is contrary to Second Circuit precedent. *See, e.g.*, *Matta*, 508 F. App'x at 56 (holding that ALJ's RFC does not need to perfectly match any opinion but should be consistent with the record as a whole). Neither is such a rule supported by the governing regulations, which place the responsibility for making an RFC determination with the ALJ. *See* 20 C.F.R. § 404.1546(c) (stating that the RFC determination is the responsibility of the ALJ); 20 C.F.R. § 404.1545(a)(3) (explaining that a claimant's RFC will be assessed "based on all of the relevant medical and other evidence").

Finally, this Court may not "decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the [ALJ]." *Fanton v. Astrue*, 2011 WL 282383, at *2 (W.D.N.Y. Jan. 25, 2011) (quoting *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.

[7] The plaintiff cites a number of district court cases, including *Kiggins*, for the proposition that by rejecting the opinions in the record, the ALJ substituted his lay opinion or created a gap. *See* Docket Item 6-1 at 21-22. But courts in this circuit also have held that failure to give any one opinion controlling weight does not mean that the ALJ substituted his lay opinion or opened a gap in the record. *See, e.g.*, *Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 349 (W.D.N.Y. 2018) (holding that ALJ's determination was supported by substantial evidence because, even though the ALJ did not assign controlling weight to any one opinion, there was not an absence of opinion evidence when the ALJ discussed four separate opinions in reaching his RFC determination); *Currie v. Comm'r of Soc. Sec.*, 2018 WL 5023606 at *3 (W.D.N.Y. Oct. 17, 2018) ("Simply because the ALJ afford[s] no single opinion controlling weight does not mean . . . that she substitute[s] her own expertise of the medical proof for medical opinion."). Those holdings are not necessarily, or even likely, inconsistent. Social security disability appeals are highly fact intensive, and decisions are often specific to unique circumstances in each case. Here, for example, the ALJ's careful analysis and balancing of several opinions given some weight provide enough support for his RFC.

1986)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *see also Fanton*, 2011 WL 282383, at *2 (explaining that "[t]he Commissioner's findings are not subject to reversal merely because two inconsistent conclusions could be drawn from the evidence, so long as his particular finding is supported by substantial evidence"). So even if this Court might disagree with the ALJ's conclusion, it must affirm so long as the conclusion is supported by substantial evidence. *See* 42 U.S.C. § 405(g).

The ALJ clearly articulated his reasons for the weight he assigned to each opinion, and he included an explanation of why he discounted portions of certain opinions. He arrived at his RFC determination after carefully considering the record as a whole, including the opinion and other medical evidence. Although the ALJ's interpretation was not the only possible interpretation, it was supported by substantial evidence. And for that reason, this Court is not free to second guess it.

**C. OTHER SOURCE OPINION**

Finally, Lori argues that the ALJ erred because "[i]n his discussion of the evidence, the ALJ did not mention [Tracy Sherman's September 2015] opinion, or [Lori's] treatment at Gate house professional." Docket Item 6-1 at 28. While an ALJ may consider the opinions of "other sources"—for example, therapists such as Ms. Sherman—he is not obliged to assign weight or give deference to these other-source opinions.[8] *See Genier*, 298 F. App'x at 108 (citing 20 C.F.R. § 416.913(a) and SSR 06-

[8] When Lori filed her claim, therapists were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment"; however, an opinion from such a source still could "outweigh

03P, 2006 WL 2329939 (Aug. 9, 2009)). Nevertheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6.

Here, the ALJ cited the records from Gate House Professional, *see* Docket Item 4 at 28 (citing Gate House record while summarizing the objective medical evidence in the case), but he did not explicitly discuss, or assign any weight to, Ms. Sherman's 2015 report. Nevertheless, if the ALJ's failure to do so was error, that error was harmless. That is because Ms. Sherman's report is largely cumulative to other evidence in the record and not inconsistent with the RFC determination. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (holding that remand is not required when "the excluded evidence is essentially duplicative of evidence considered by the ALJ"); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (finding harmless error after an ALJ failed to assign any specific weight to an opinion that was generally consistent with the RFC findings).

In September 2015, Ms. Sherman completed a three-page questionnaire from the Social Security Administration. *See* Docket Item 4-1 at 23-25. The first part of the questionnaire lists current symptoms, diagnoses, and a note that treatment consists of

---

the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006); *cf.* 20 C.F.R. § 416.902(a)(7) (2017) (expanding list of "acceptable medical sources" to include "licensed advanced practice registered nurse[s]").

medication prescribed by a psychiatrist. Docket Item 4-1 at 23. Nothing about that adds anything new to what already is acknowledged in the ALJ's decision. A good portion of the form consists of mental status observations and documentation of the plaintiff's own claims regarding her symptoms. *Id.* at 23-24. This record of Lori's report about her symptoms is consistent with the testimony she gave at the hearing. *See* Docket Item 4 at 45-66. And Lori does not challenge the ALJ's assessment of her subjective claims.

The remainder of the form documents Lori's struggles at her last job; her anxiety and stress about social and work structures; and the challenges she faces in remaining focused and motivated when depressed. Docket Item 4-1 at 24. Ms. Sherman checked the box "No Limitation" for adaptation but also noted that she was "uncertain" about this. *Id.* at 25. Perhaps most significantly, at the end of the questionnaire, Ms. Sherman checked the box reading, "I cannot provide a medical opinion regarding this individual's ability to do work-related activities." *Id.* at 25. Indeed, other than general observations about Lori's ability to pay attention and repeating Lori's assessment of her own condition, nothing on the form suggests Ms. Sherman's opinion about Lori's ability to perform work-related tasks. *See id.* at 22-25.

Even giving Lori the benefit of all inferences that might be drawn from Ms. Sherman's assessment, any findings are at most duplicative of evidence considered by the ALJ and generally consistent with the RFC. As the ALJ found, Lori had severe impairments due to depressive disorder and anxiety disorder that "significantly limit the ability to perform basic work activities." Docket Item 4 at 23. He then found that Lori had a number of nonexertional limitations, including being limited to unskilled work, the

inability to "perform fast-paced or strictly time-limited tasks," the ability to interact only occasionally with others, and a tolerance for "only occasional changes in work setting or assignment." *Id.* at 26. He specifically found that Lori had a "moderate limitation" "concentrating, persisting, or maintaining pace," *see id.* at 25, consistent with Ms. Sherman's finding that Lori had trouble paying "attention [and] struggles to stay on topic," *see* Docket Item 4-1 at 23. And the ALJ incorporated those limitations into the RFC. *See* Docket Item 4 at 26-31. The Court therefore finds that if the ALJ's failure to explicitly consider Ms. Sherman's report was error, that error was harmless.

## **CONCLUSION**

Although this Court has sympathy for Lori and the hardships that must stem from the impairments she experiences, the ALJ's decision was neither contrary to the substantial evidence in the record nor the result of any legal error. Therefore, for the reasons stated above, Lori's motion for judgment on the pleadings, Docket Item 6, is DENIED; the Commissioner's cross motion for judgment on the pleadings, Docket Item 9, is GRANTED; the complaint is DISMISSED; and the Clerk of Court shall close the file.

SO ORDERED.

Dated: January 22, 2021
Buffalo, New York

LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE